J. S55032/18 & S55033/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF S.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.B., MOTHER | : | No. 1662 EDA 2018 |

Appeal from the Decree, April 30, 2018,
in the Court of Common Pleas of Montgomery County
Orphans' Court Division at No. 2017-A-0186

| | | |
|---|---|---|
| IN RE: ADOPTION OF L.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.B., MOTHER | : | No. 1663 EDA 2018 |

Appeal from the Decree, April 30, 2018,
in the Court of Common Pleas of Montgomery County
Orphans Court Division at No. 2017-A-0187

BEFORE: OLSON, J., STABILE, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED SEPTEMBER 24, 2018**

T.B. ("Mother") appeals from the April 30, 2018 decrees entered in the Court of Common Pleas of Montgomery County, Family Court Division, involuntarily terminating her parental rights to her dependent children, S.M., female child, born in June of 2015, and L.M., male child, born in May of 2013 (collectively, "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1), (2), (8), and (b). We have consolidated Mother's appeals ***sua sponte***. After careful review, we affirm.

At the termination hearing, the trial court set forth the following "designed to satisfy the Pennsylvania Rules of Appellate Procedure 1925(a)":

> Now, the Office of Children & Youth -- I am going to refer to it as OCY -- filed a petition to terminate the parental rights of [Mother] and [S.M. ("Father")] to [S.M.] and [L.M.].
>
> The petition was filed on October the 18th, 2017, and alleges the following grounds as a basis for terminating parental rights: Section 2511(a)(1), Section 2511(a)(2) and Section 2511(a)(8) of the Pennsylvania Adoption Act.
>
> On January 23, 2018, OCY amended its petition for [Father] to include Section 2511(a)(11) where the parent is required to register as a sex offender.

Notes of testimony, 4/30/18 at 134.

> Throughout this hearing this Court has heard evidence regarding the repeated displays of admitted poor judgment by [Mother and Father].
>
> Admitted Exhibit OCY-9 shows that [Father] was convicted and began a state sentence in 2000 for rape, aggravated sexual assault and deviant sexual assault. His two victims were children, family friends, females age 11 and 13. Because of these convictions, [Father] is subject to sex offender conditions including a requirement to register as a sex offender. [Father] remains on probation supervision today.
>
> [Mother] is addicted, admittedly, to pain medications. [Father], while they were together, assisted [Mother] in obtaining those drugs. [Mother] exhibited drug[-]seeking behavior.
>
> [Mother] also has some criminal cases from 2017, namely IRS fraud and credit card theft.
>
> The relationship of [Mother and Father] was described by numerous witnesses as chaotic and toxic.

2016 was a pivotal year for this family. [Mother and Father] experienced unstable housing, at one point living with seven other people. There were 103 police contacts with the New Hanover Police Department, culminating with the issuance of a PFA against [Father] during the summer of 2016. However, [Mother and Father] continued to see each other.

[Father] was jailed, therefore, for violating the terms of his PFA and he served three months in the Montgomery County Correctional Facility.

During this time [Mother] entered drug rehab.

The [C]hildren were placed with the maternal grandmother in June of 2016. When the maternal grandmother became ill, the [C]hildren went into the legal custody of OCY in October of 2016.

OCY Exhibits 3, 4 and 5 contain Family Service Plans. These documents were admitted into evidence. The goals of all of these plans for both parents involved the same elements that I talked about as the legal expectation or the legislative expectations of parents for all children.

The Family Service Plan goals were to provide housing and all of the other things that children need; employment; drug treatment for [Mother]; anger management treatment, training, counseling, whatever for [Father]; parenting for both parents; and, importantly, cooperation with whatever services that OCY provided.

During a meeting with the OCY staff in January of 2017, [Father] became angry that [Mother] brought her fiance [sic] to the meeting and smashed car windows. As a result [Father] was imprisoned for six months and he was released at the end of September 2017.

OCY filed this petition then to terminate the parental rights of both [Mother and Father] the following month.

Throughout this hearing this Court has heard no progress for [Mother] related to her Family Service Plan goals and next to little and minimal progress for [Father]. The only exception being that of employment.

[Mother] continued to use drugs. She testified that she was homeless, yet she refused to go to a shelter or to do something about it.

[Mother] is unemployed and has been off and on throughout the entire duration of the [C]hildren's presence in OCY custody.

[Mother] did not complete mental health treatment as required.

And as it relates to [Mother's] drug use, a review of OCY Exhibit 8 shows that there were 57 attempts to obtain a urinalysis. Thirteen were obtained. Of those thirteen, five were positive.

[Mother] largely was uncooperative with OCY. She lied to caseworkers. The Time Limited Family Reunification service was discharged as unsuccessful.

[Father] has fallen short in his goal of meeting housing, living with his mother in a one-room setting. He is, however, employed.

[Father] took parenting classes completing nine of twelve sessions offered.

In this case [Father's] biggest issue is rage. There is an anger that needs to be controlled before I think these kids are safe. That rage is still outstanding.

[Father] testified that he attended anger management classes while in state prison. Either it wore off or it never took effect. However, there was little to no

impetus to pursue that Family Service Plan goal to date. There is, according to [Father's] testimony, scheduled training, but today is the day in court that everybody looks forward to. This is the day to have all of your ducks in a row, because this is the day that I am looking at.

There was no doubt in my mind that both [Mother and Father] love their kids. That was so evident to me.

[Father] never missed a visit. That was commendable.

[Mother], however, was inconsistent and had numerous excuses, however, provided little notice in terms of advising the supervision staff of those missed visits.

The two [C]hildren in this case entered OCY with problems. [L.M.] needed speech therapy. He had behavior issues and required extensive dental work to the point of needing anesthesia. [Mother] commended herself, however, on attending this dental surgery.

[S.M.], at two years old, had mobility issues, walking on her tiptoes. She was behind in her immunizations. She also had speech problems as well as limited behavioral issues and the dental issue of one cavity at the age of two.

*Id.* at 139-144.

In this case the testimony clearly establishes that there is affection and [Mother and Father] care for and interact with their [C]hildren. [Father] has maintained throughout his visits consistent contact, and [Mother], although her contact is somewhat inconsistent, there is somewhat of a bond between [Mother and Father] and the [C]hildren.

Despite a parent's wishes and desires to preserve a parental bond or role, in cases where the parent is incapable of providing even basic necessities and will

> continue to suffer such parental incapacity, the focus of this Court is not on the parent's wishes and desires, but on the child's need for safety, permanency, security, and their well-being.
>
> The child's safety is this Court's paramount concern. Substitute care such as foster care is only a temporary setting. It is not a place for children to grow up in.
>
> Despite the bond, I have not heard any evidence that [Mother and Father] are ready to go home with their [C]hildren today. Today is your day in court. [F]ather does not have a home. He hasn't attended the anger management that he needs to control his rage. [M]other has no job, hasn't gone through treatment. It is not there.
>
> . . . .
>
> In this case the testimony clearly established that there is affection and I find that there is a minimal parental bond between birth parents and [S.M.] and [L.M.], however, I find that a stronger bond exists between [S.M.], [L.M.] and their foster parents. I heard testimony of the significant improvement of the [C]hildren. I heard of the affection, the tenderness, the caring of the foster parents, the concern.

*Id.* at 152-153.

At the conclusion of the hearing, the trial court entered the decrees terminating Mother's and Father's parental rights to S.M. and L.M. On May 25, 2018, Mother filed timely notices of appeal, together with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[1] Subsequently, the trial court filed a Rule 1925(a) opinion stating that its

---

[1] The certified record before us provides no indication as to whether Father appealed from the April 30, 2018 decrees terminating his parental rights to S.M. and L.M.

reasoning for the entry of the April 30, 2018 decrees is set forth in the April 30, 2018 termination hearing transcript at pages 133-155.  (Trial court opinion, 6/12/18.)

Mother raises the following issue for our review:  "The Trial Court erred in finding clear and convincing evidence existed to terminate [] Mother's parental rights under 23 Pa.C.S.[A.] Section 2511(a)(1)(2)(8) [sic]." (Mother's briefs at 7.)

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012).  "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id.**  "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id.**  The trial court's decision, however, should not be reversed merely because the record would support a different result. **Id.** at 827.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. **See In re R.J.T.**, 9 A.3d [1179, 1190 (Pa. 2010)].

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013).  "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **In re M.G.**, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted).  "[I]f competent

evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination decrees pursuant to Subsections 2511(a)(1) and (b), which provide as follows:

### § 2511. Grounds for involuntary termination

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first

> > initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(1).

> > A court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least the six months prior to the filing of the termination petition. The court should consider the entire background of the case and not simply:
> >
> > > mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his . . . parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re Z.P.*, 994 A.2d 1108, 1272 (Pa.Super. 2010) (internal citations omitted; citations omitted).

Here, in terminating Mother's parental rights under Section 2511(a)(1), the trial court determined that OCY produced clear and convincing evidence of conduct sustained for a period of at least six months prior to the filing of the termination petitions that evidenced Mother's settled intent to relinquish her parental claim to S.M. and L.M. or her refusal or inability or failure to perform parental duties. Specifically, the trial court found that the evidence clearly and convincingly demonstrated that Mother failed to perform parental

duties by failing to obtain housing, participate in drug treatment, obtain employment, and comply with the goals of her family service plan. (Notes of testimony, 4/30/18 at 145.) The trial court further noted that despite the availability of rehabilitation and substance abuse treatment, Mother chose to forgo treatment and live in her car. (*Id.*)

We conclude that the record supports the trial court's factual findings and that the trial court did not abuse its discretion in terminating Mother's parental rights to S.M. and L.M. under Section 2511(a)(1).

We now turn to whether termination was proper under Section 2511(b). As to that section, our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on

the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

***In re Adoption of C.D.R.***, 111 A.3d at 1219, quoting ***In re N.A.M.***, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***In re T.S.M.***, 73 A.3d at 268. The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id.*** at 269. The ***T.S.M.*** court observed, "[c]hildren are young for a scant number of years, and we have an obligation

to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id.***

Here, based on the testimony and evidence presented at the termination hearing, the trial court found that a minimal parental bond exists between Mother and Children, that a stronger bond exists between Children and their foster parents, and that Children have significantly improved since being placed with their foster parents. (***Id.*** at 153.) Therefore, the trial court concluded that termination would best serve the Children's needs and welfare and that Children would not suffer irreparable harm if Mother's parental rights were terminated. (Notes of testimony, 4/30/18 at 153.) Our review of the record supports this determination, and the trial court did not abuse its discretion in terminating Mother's parental rights.

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under Sections 2511(a)(1) and (b).

Decrees affirmed.


Stabile, J. joins this memorandum.

Olson, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/18